USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/29/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D'Arrigo Bros. Co. of New York, Inc.,

               Plaintiff,

–v–

KNJ Trading Inc., et al.,

               Defendants.

19-cv-1129 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

On July 1, 2019, Plaintiff D'Arrigo Bros. of New York, Inc. filed a motion for default judgment against Defendants KNJ Trading Inc. and Byung Soo Kang. *See* Dkt. No. 32. For the reasons that follow, the Court GRANTS Plaintiff's motion.

**I.  BACKGROUND**

On February 6, 2019, Plaintiff filed a Complaint against Defendants alleging, among other claims, a breach of the trust provision of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c), which "creates a trust in favor of the seller of perishable agricultural commodities and their proceeds upon receipt by the buyer, pending full payment." *A & J Produce Corp. v. Harvest Produce Corp.*, No. 16-cv-7239 (LTS), 2017 WL 3668995, at *1 (S.D.N.Y. Aug. 24, 2017); *see also* 7 U.S.C. § 499e(c). According to the Complaint, Plaintiff sold and delivered perishable agricultural commodities to Defendants for which Defendants have refused to pay despite repeated demands. *See* Compl. (Dkt. No. 4) ¶¶ 8–11.

1

Defendants were served with the Complaint on February 7, 2019. Dkt. Nos. 10, 26. On February 6, 2019, the Court entered a temporary restraining order in this matter and ordered Defendants to show cause at a hearing on February 15, 2019 why a preliminary injunction should not issue. Dkt. No. 3. At the February 15 show cause hearing, Kang appeared to inform the Court that he had not been able to secure representation. *See* Dkt. No. 16 at 1. Accordingly, the Court extended the temporary restraining order for three weeks to allow Defendants to find counsel and file papers in opposition to Plaintiff's preliminary injunction motion. *Id.* The Court informed Kang that KNJ, a corporation, must be represented by counsel. Dkt. No. 9. Ultimately, no counsel noticed an appearance on behalf of Defendants, Defendants did not file opposition papers, and the Court granted Plaintiff's motion for a preliminary injunction. *See* Dkt. No. 17.

On March 6, 2019, the Court received a letter from Kang dated March 4, 2019. Dkt. No. 16. In the letter, Kang stated that he is the plaintiff in a PACA action in the United States District Court for the District of New Jersey and asked "for the court to appoint [him] an attorney and/or 90 days for a disposition in [the] New Jersey case." *Id.* at 3. The Court thereafter required Plaintiff to inform the Court whether it consented to an adjournment of the deadline for Defendants to respond to the Complaint. *Id.* at 2. It further directed Kang to the pro se legal clinic if he wished to seek legal advice. *Id.*

On March 15, 2019, Kang entered a pro se notice of appearance, Dkt. No. 19, and on March 18, 2019, Plaintiff notified the Court that it consented to Defendants' request to adjourn the deadline to respond to the Complaint, *see* Dkt. No. 21. Accordingly, the Court extended Defendants' deadline to respond to the Complaint to May 20, 2019. Dkt. No. 22.

By June 24, 2019, Kang had not responded to the Complaint—or otherwise communicated with the Court since filing his notice of appearance on March 15, 2019—and KNJ had neither noticed an appearance nor responded to the Complaint. That day, Plaintiff requested that defaults be entered against Defendants, Dkt. Nos. 27, 28, and a certificate of default was entered against both Defendants by the Clerk of Court, Dkt. No. 29. On July 1, 2019, Plaintiff moved for default judgment against Defendants. Dkt. No. 32. Plaintiff subsequently served the motion for default judgment on Defendants and filed proof of that service on the public docket. Dkt. Nos. 35, 36.

## II. DISCUSSION

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128. Rule 54(c) states, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**A. Liability**

On a default judgment motion, the defendant is deemed to have admitted all of the well-pleaded factual allegations contained in the complaint. Fed. R. Civ. P. 8(b)(6); *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013). However, "because a party in default does not admit conclusions of law," it is incumbent upon the Court to consider whether the plaintiff has pleaded facts sufficient to establish the defendant's liability with respect to each cause of action. *See Zhen Ming Chen v. Y Café Ave B Inc.*, 2019 WL 2324567, at *1 (S.D.N.Y. May 30, 2019). The legal sufficiency of these claims is analyzed under the familiar plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor, *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014).

Plaintiff alleges that Defendants are liable under § 499e(c) of PACA for refusing to pay for the produce they purchased from Plaintiff. *See* Compl. ¶¶ 7–26; 35–39.[1] "Congress enacted PACA in 1930 to regulate the sale and marketing of produce in interstate commerce." *Am. Banana Co., Inc. v. Republic Nat. Bank of N.Y., N.A.*, 362 F.3d 33, 36 (2d Cir. 2004). Section 499e(c) provides sellers of perishable produce with "a self-help tool enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d

---

[1] Though Plaintiff asserts various other claims in its Complaint, they all arise from and seek damages for the same conduct under PACA. Because the Court finds liability under PACA for a breach of trust as set forth below, "the Court need not address Plaintiff's alternative claims." *See A & J Produce Corp.*, 2017 WL 3668995, at *3 n.3 (concluding that the court need not address plaintiff's alternative claims for failure to pay for goods sold and breach of contract once it found liability on plaintiff's PACA trust claim); *Higueral Produce, Inc. v. CKF Produce Corp.*, No. 18-cv-6760 (NGG) (SJB), 2019 WL 5694079, at *14 n.10 (E.D.N.Y. Aug. 16, 2019) (finding award of damages for breach of trust on default judgment resolved all PACA claims pleaded in complaint), *report and recommendation adopted as modified*, No. 18-cv-6760 (NGG) (SJB), 2019 WL 5693798 (E.D.N.Y. Sept. 30, 2019).

701, 705 (2d. Cir. 2007) (quoting *D.M. Rothman & Co. v. Korea Commercial Bank of N.Y.*, 411 F.3d 90, 93 (2d Cir. 2005)).  Under this section, "a dealer of perishable commodities must hold the commodities themselves, or the proceeds from them, in a trust for the unpaid seller until full payment is made." *Higueral Produce, Inc.*, 2019 WL 5694079, at *4.  It specifically provides that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker . . . and any receivables or proceeds from the sale of such commodities . . . shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).  "[T]he trust is formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full," *G & P Warehouse, Inc. v. Cho's Church Ave. Fruit Mkt.*, No. 15-cv-6174 (NG) (CLP), 2016 WL 5802747, at *4 (E.D.N.Y. Aug. 12, 2016) (quoting *Ger-Nis Int'l, LLC v. FJB, Inc.*, No. 07-cv-898 (RO), 2007 WL 656851, at *1 (S.D.N.Y. Mar. 1, 2007)), *report and recommendation adopted*, No. 15-cv-6174 (NG) (CLP), 2016 WL 5716819 (E.D.N.Y. Sept. 30, 2016), and it is "intended exclusively to benefit produce suppliers," *id.* (quoting *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 242 (2d. Cir. 2006)).  The "'fiduciary obligation under PACA' includes the duty 'to repay the full amount of the debt owed to the PACA beneficiary.'"  *Higueral Produce, Inc.*, 2019 WL

5

5694079, at *5 (quoting *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, No. 09-cv-2614 (ILG), 2011 WL 6329194, at *5 (E.D.N.Y. Dec. 16, 2011)).

"To enforce payment from the trust, PACA beneficiaries may sue in an appropriate U.S. district court." *Am. Banana Co.*, 362 F.3d at 38. To recover proceeds from a PACA-created trust, a Plaintiff must demonstrate the following five elements:

> (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer, or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser of its intention to[ ]do so.

*A & J Produce Corp.*, 2017 WL 3668995, at *3 (quoting *Nico Mexi Food, Inc. v. Abarrotera Cent. #2 Wholesale, Corp.*, No. 14-cv-296 (KNF), 2016 WL 873466, at *3 (S.D.N.Y. Feb. 10, 2016)); *see also* 7 U.S.C. § 499a (defining terms).[2]

Plaintiff's allegations establish all five elements here. First, it alleges that between June 29, 2018 and October 31, 2018, it sold and delivered to KNJ perishable agricultural commodities. Compl. ¶ 8. While the Complaint does not specify the nature of the commodities, the invoices annexed to it demonstrate that Plaintiff sold KNJ a variety of fresh fruits and vegetables. *See generally* Dkt. No. 4-1; *see also Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-cv-3841 (LDH) (RLM), 2018 WL 4327923, at *4 (E.D.N.Y. July 9, 2018) (considering invoices in determining whether complaint's allegations satisfied first element), *report and recommendation adopted sub nom. Cent. Produce Corp. v. 34-18 M&M Corp.*, No. 17-cv-3841 (LDH) (RLM), 2018 WL 4326925 (E.D.N.Y. Sept. 10, 2018). Second, the Complaint alleges

---

[2] A "perishable agricultural commodity" includes "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4). A PACA "dealer" is any "person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce." *Id.* § 499a(b)(6). And a "person" includes "individuals, partnerships, corporations, and associations." *Id.* § 499a(b)(1).

that KNJ was, at all relevant times, licensed as a dealer under PACA. Compl. ¶ 4. A simple search of PACA licenses on the United States Department of Agriculture's website confirms that KNJ Trading Inc. has held a PACA license since May 19, 2016, *see* United States Department of Agriculture, Welcome to PACA Search, https://apps.mrp.usda.gov/public_search; *see also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (holding that courts can take judicial notice of public records), and because it "was licensed under the provisions of PACA during the relevant time period, [KNJ] is a 'dealer'" for purposes of the statute, *see Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 268 (E.D.N.Y. 2019). Third, the Complaint alleges that Plaintiff is a New York corporation and KNJ's principal place of business is in New Jersey. Compl. ¶¶ 3–4. Furthermore, the invoices annexed to the Complaint list Plaintiff's address in New York and KNJ's in New Jersey. *See generally* Dkt. No. 4-1. Because it appears as though the transactions at issue involved produce that was sent from Plaintiff's place of business in New York to KNJ's place of business in New Jersey—and, indeed, because Plaintiff alleges that it sold and delivered the goods to KNJ "in interstate commerce," Compl. ¶ 8—the third element is satisfied. Fourth, Plaintiff alleges that KNJ "failed and refused to pay for the commodities despite repeated demands," thereby satisfying the fourth element. *Id.* ¶ 11. Fifth, and finally, Plaintiff preserved its trust rights by giving written notice to KNJ by "including the necessary language on the face of [its] invoice[s]." *A & J Produce Corp.*, 2017 WL 3668995, at *3; *see also* Compl. ¶ 12; *see also generally* Dkt. No. 4-1.

Having determined that the Complaint establishes KNJ's liability under PACA, the Court next considers whether Defendant Byung Soo Kang is jointly and severally liable. "An individual who is in a position to control the assets of the PACA trust and fails to preserve them,

may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Coosemans Specialties*, 485 F.3d at 705.  The Complaint alleges that Kang was "an officer, director, and shareholder of the corporate defendant, KNJ, in charge of writing checks to pay the accounts payable of the corporate defendant," and that he "elected not to pay" Plaintiff.[3]  Compl. ¶¶ 36, 37.  Accepting these allegations as true, which the Court must do on a motion for default judgment, the Court concludes that Kang had control over the PACA trust's assets and can be held jointly and severally liable.  *See Higueral Produce*, 2019 WL 5694079, at *6 ; *A & J Produce Corp.*, 2017 WL 3668995, at *3.  Having so concluded, it need not address Plaintiff's alternative claims against Kang.

### B. Damages

"Once liability is established, the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks."  *Bleecker v. Zetian Sys., Inc.*, No. 12-cv-2151 (DLC) (SN), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).  "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).  "Establishing the appropriate amount of damages involves two steps: (1) 'determining the proper rule for calculating damages on . . . a claim'; and

---

[3] The Court excuses Plaintiff's typographical error, in which it names Kang in Count V but refers to him in the allegations therein as "Johann."  *See* Compl. ¶¶ 36–38.

(2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *Begum v. Ariba Disc., Inc.*, No. 12-cv-6620 (DLC) (KNF), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Credit Lyonnais*, 183 F.3d at 155).

To determine the amount of damages, the Court may conduct a hearing, but doing so is not necessary "as long as [the Court] ensure[s] that there [i]s a basis for the damages specified in the default judgment." *Transatlantic Marine*, 109 F.3d at 111 (quoting *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (stating that a district judge may, but is not required to, conduct a hearing on the matter of damages). Because the motion papers provide a clear basis for the damages specified in the default judgment, the Court concludes that a hearing is not required here.

Plaintiff seeks $65,970.14 in damages and $590 in costs, for a total of $66,560.14.[4] *See* Dkt. No. 33-5. "Under PACA, a dealer who fails or refuses to make full payment for commodities or fails to maintain the trust as required is liable to the injured party for the full amount of damages sustained." *Higueral Produce, Inc.*, 2019 WL 5694079, at *9 (citing 7 U.S.C. §§ 499b(4) & 499e(a)). Furthermore, while "PACA does not require an award of . . . costs, [it] does permit the court to enforce the parties' contractual agreement by granting such relief." *G & P Warehouse, Inc.*, 2016 WL 5802747, at *12 (alteration in original).

The Court's calculation of the sums in Plaintiff's invoices, *see* Dkt. No. 4-1, amounts to the $65,970.14 requested by Plaintiff. Accordingly, it awards Plaintiff that amount for unpaid

---

[4] The Court notes that though Plaintiff also sought interest and attorney's fees in its Complaint, *see* Compl. Count IV, it does not seek interest or attorney's fees in its default judgment motion, *see* Dkt. No. 33-5.

9

produce sold to Defendants from June 29, 2018 through October 31, 2018. Furthermore, Plaintiff's invoices, which clearly state that the buyer is liable for costs of recovery in the event Plaintiff must enforce its trust claim, *see, e.g.*, Dkt. No. 4-1 at 4, are "part of the contractual agreement between the parties," *Higueral Produce*, 2019 WL 5694079, at *13. Therefore, Plaintiff is also entitled to $590 in costs for the court filing fee, the Clerk's fee, the process server fee, and the statutory fee. Dkt. No. 33-5.

## III.  CONCLUSION

For the reasons articulated above, Plaintiff's motion for default judgment is GRANTED. Plaintiff is entitled to judgment in the principal amount of $65,970.14, plus costs of $590, for a total judgment in the amount of $66,560.14.

The Clerk of Court is directed to enter judgment and close this case. This resolves Dkt. No. 32.

The Clerk of Court is also directed to mail this Opinion and Order to the pro se Defendant.

SO ORDERED.

Dated: April 29, 2020
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　ALISON J. NATHAN
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge